1  DALE L. ALLEN, JR., # 145279
   DIRK D. LARSEN, # 246028
2  LOW, BALL & LYNCH
   505 Montgomery Street, 7th Floor
3  San Francisco, California 94111-2584
   Telephone (415) 981-6630
4  Facsimile (415) 982-1634

5  Attorneys for Defendants
   CITY OF EMERYVILLE, OFFICERS
6  ROBERT ALTON, MICHAEL ALLEN,
   S. ANDRETICH AND DAN DIOTALEVL
7  .

8                    UNITED STATES DISTRICT COURT

9                  NORTHERN DISTRICT OF CALIFORNIA

10

11  PAUL D. COLE,                          )  Case No. CV 08-2360 CRB
                                           )
12              Plaintiff,                 )  DEFENDANTS CITY OF
                                           )  EMERYVILLE, OFFICERS
13       vs.                               )  ROBERT ALTON, MICHAEL
                                           )  ALLEN, S. ANDRETICH AND
14  CITY OF EMERYVILLE, OFFICERS ROBERT    )  DAN DIOTALEVL'S MOTION TO
    ALTON, MICHAEL ALLEN, S. ANDRETICH,    )  DISMISS PLAINTIFF PAUL D.
15  DAN DIOTALEVL and FOUR (4) additional  )  COLE'S COMPLAINT
    unknown officers                       )  (F.R.C.P. 12(b)(6))
16                                         )
                Defendant.                 )  Date:       September 12, 2008
17                                         )  Time:       10:00 a.m.
                                           )  Courtroom:  8, 19th floor
18  _____)  Judge:     Hon. Charles R.
                                                          Breyer
19

20       TO THE COURT AND PLAINTIFF *IN PRO SE* PAUL D. COLE:

21       NOTICE IS HEREBY GIVEN that September 12, 2008, at 10:00 a.m., in Courtroom 8 of the

22  above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California, defendants CITY

23  OF EMERYVILLE, OFFICERS ROBERT ALTON, MICHAEL ALLEN, S. ANDRETICH and DAN

24  DIOTALEVL ("Defendants") will, and hereby do, move the Court to issue an order dismissing plaintiff

25  PAUL D. COLE's ("Plaintiff") complaint in the above-captioned matter with prejudice.  The grounds for

26  this motion is that Plaintiff's complaint fails to state any claim against Defendants upon which relief can

27  be granted.  (F.R.C.P. 12(b)(6).)  In the alternative, Defendants move the Court for an order dismissing

28  any one or more of Plaintiff's claims against them on the grounds that such claims fail to state a claim

1  upon which relief can be granted.

2      The motion is based on this Notice, the Memorandum of Points and Authorities below, the

3  Motion to Strike filed concurrently herewith, the pleadings and papers filed herein, and on such oral

4  and/or documentary evidence as may be presented at the hearing of this motion.

5                              **STATEMENT OF RELIEF SOUGHT**

6      Defendants respectfully request that the Court issue an order granting the present motion and

7  dismissing all of Plaintiff's causes of action with prejudice.  Those causes of action are: (1) first cause of

8  action for "violation of constitutional right to be free from conspiracy;" (2) second cause of action for

9  failure to train officers adequately (presumably brought pursuant to 42 U.S.C. § 1983); (3) third cause of

10 action for violation of the First and Fourteenth Amendments to the U.S. Constitution (retaliation); (4)

11 fourth cause of action, brought pursuant to 42 U.S.C. § 1983, for violation of the Fifth and Fourteenth

12 Amendments to the U.S. Constitution (racial profiling); (5) fifth cause of action for violation of the

13 Fourth Amendment to the U.S. Constitution (falsely obtaining arrest warrant) and (6) sixth cause of

14 action for violations of California Penal Code § 422.6(a) and Civil Code § 52.1.

15     In the alternative, Defendants move the Court for an order dismissing any one or more of

16 Plaintiff's claims against them on the grounds that such claims fail to state a claim upon which relief can

17 be granted.

18 ///

19 ///

20 ///

21 ///

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

## MEMORANDUM OF POINTS AND AUTHORITIES

TABLE OF CONTENTS

Page(s)

I.    STATEMENT OF ISSUES TO BE DECIDED . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

III.  STATEMENT OF FACTS  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.    Pleading Allegations  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      B.    Exhibits Attached to Complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.   ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      A.    Standard of Review  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      B.    All of Plaintiff's Causes of Action Fail to State a Claim
            for Relief Because the City's  Officers Had Probable Cause
            to Obtain the Arrest Warrant  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

            1.    Milton's Trustworthy Statement Provided the Requisite
                  Probable Cause for the Arrest Warrant  . . . . . . . . . . . . . . . . . . . . . . . . . . 5

            2.    Officers Allen, Alton, Andretitch and Diotalevl Are Entitled
                  to Qualified Immunity from Liability and Suit  . . . . . . . . . . . . . . . . . . . . . 8

      C.    Plaintiff's Sixth Cause of Action for Violation of State Statutes
            Fails by the Terms of the Statutes in Question  . . . . . . . . . . . . . . . . . . . . . . . . . . 11

V.    CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

1

<u>TABLE OF AUTHORITIES</u>

2

Page(s)

3   <u>Federal Cases</u>

4   Act Up!/Portland v. Bagley
        988 F.2d 868 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

5

6   Ahlers v. Schebil
        188 F.3d 365 (6th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

7   Anderson v. Creighton
        483 U.S. 635 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

8

9   Baker v. McCollan
        443 U.S. 137 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

10  Balistreri v. Pacifica Police Dept.
        901 F.2d 696 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-5

11

12  Beck v. Ohio
        379 U.S. 89 (1964) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

13  Bell Atlantic Corp. v. Twombly
        550 U.S. ___, 127 S.Ct. 1955 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

14

15  Broam v. Bogan
        320 F.3d 1023 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6

16  Franklin v. Fox
        312 F.3d 423 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 7-11

17

18  Franks v. Delaware
        438 U.S. 154 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

19  Harlow v. Fitzgerald
        457 U.S. 800 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

20

21  Houghton v. South
        965 F.2d 1532 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

22  Hunter v. Bryant
        502 U.S. 224 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

23

24  Illinois v. Gates
        462 U.S. 213 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

25  In re Delorean Motor Co.
        991 F.2d 1236 (6th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

26

27  Saucier v. Katz
        533 U.S. 194 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-9

28

<table>
<tr><td></td><td align="right">Page(s)</td></tr>
</table>

Weisbuch v. County of Los Angeles
      119 F.3d 778 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

<u>Federal Statute</u>

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 8, 9

<u>State Statutes</u>

California Penal Code

      § 140 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *passim*

      § 422.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-3, 11-12

California Civil Code § 52.1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1-2, 11-12

<u>Constitutional Provisions</u>

U.S. Constitution

      Amend. I . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

      Amend. IV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

      Amend. V . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

      Amend. XIV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT (F.R.C.P. 12(b)(6))

J:\1426\sf0081\M-DIS.mot-mpa.wpd                                                    Case No. CV 08-2360 CRB

1  I.    **STATEMENT OF ISSUES TO BE DECIDED**

2      This motion presents the following issues for decision: (1) whether Plaintiff's first cause of

3  action for "violation of constitutional right to be free from conspiracy" states a claim upon which relief

4  can be granted (F.R.C.P. 12(b)(6)); (2) whether Plaintiff's second cause of action for failure to train

5  officers adequately states a claim upon which relief can be granted (F.R.C.P. 12(b)(6)); (3) whether

6  Plaintiff's third cause of action for violation of the First and Fourteenth Amendments to the U.S.

7  .Constitution states a claim upon which relief can be granted (F.R.C.P. 12(b)(6)); (4) whether Plaintiff's

8  fourth cause of action, brought pursuant to 42 U.S.C. § 1983, for violation of the Fifth and Fourteenth

9  Amendments to the U.S. Constitution states a claim upon which relief can be granted

10  (F.R.C.P. 12(b)(6)); (5) whether Plaintiff's fifth cause of action for violation of the Fourth Amendment

11  to the U.S. Constitution states a claim upon which relief can be granted (F.R.C.P. 12(b)(6)); and (6)

12  whether Plaintiff's sixth cause of action for violations of California Penal Code § 422.6(a) and Civil

13  Code § 52.1 states a claim upon which relief can be granted (F.R.C.P. 12(b)(6)).

14  II.    **SUMMARY OF ARGUMENT**

15      This lawsuit arises out of plaintiff PAUL D. COLE's ("Plaintiff") arrest for threatening a witness

16  in a criminal proceeding in violation of California Penal Code § 140(a). The threat took place within the

17  City of Emeryville (the "City"), and defendants Emeryville Police Officers interviewed the witness in

18  question and obtained the warrant for the arrest. Plaintiff alleges that the officers should have viewed a

19  purported surveillance video that would have shown the witness's statement to be unreliable. The

20  Emeryville officers had no direct contact with Plaintiff in the events forming the basis of the present

21  lawsuit; instead, Plaintiff was actually arrested approximately one month later by Oakland Police

22  Officers.

23      Plaintiff alleges six causes of action against the City and/or its officers. Five are based on alleged

24  violations of the U.S. Constitution, and are thus brought pursuant to 42 U.S.C. § 1983, and one is based

25  on an alleged violation of California law. None of Plaintiff's § 1983 causes of action states a claim for

26  relief because the defendant officers had probable cause to obtain the warrant for Plaintiff's arrest, and

27  did not owe Plaintiff a duty to view the surveillance video. The existence of probable cause to obtain the

28  warrant negates all federal causes of action against the officers, which are based on theories of

DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S COMPLAINT (F.R.C.P. 12(b)(6))
J:\1426\sf0081\M-DIS.mot-mpa.wpd                                                              Case No. CV 08-2360 CRB

1  conspiracy, inadequate training, retaliation, racial profiling, material omission in obtaining a warrant,

2  and violation of state civil rights. *Broam v. Bogan*, 320 F.3d 1023, 1032 (9th Cir. 2003); *Franklin v.*

3  *Fox*, 312 F.3d 423, 441 (9th Cir. 2002). Moreover, the officers are entitled to qualified immunity

4  because they can reasonably have believed that probable cause to arrest existed. *See Franklin*, 312 F.3d

5  at 439-441. Plaintiff's sixth cause of action for violation of California Penal Code § 422.6(a) and Civil

6  Code § 52.1 fails to state a claim for relief because those statutes do not apply by their terms to the

7  conduct Plaintiff attributes to Defendants.

8  **III.    STATEMENT OF FACTS**

9      Plaintiff's complaint contains both pleading allegations and attached exhibits apparently intended

10  to support those allegations. The contents of each are summarized briefly below.

11      **A.    Pleading Allegations**.

12      According to the complaint, Plaintiffs claims "are alleged to be retaliation from a previous case,

13  which has since been settled." (Complaint, ¶ 2.) Plaintiff alleges that he was arrested on April 2, 2007,

14  "as a direct result of Defendant Andretich preparing a false police report." (Complaint, ¶ 13; the exhibits

15  attached to the complaint show the date of the arrest to be April 30, 2007.) He further alleges that

16  Officers Allen and Alton prepared false supplemental reports as part of a conspiracy to retaliate him.

17      On May 4, 2007, Plaintiff was inside a Pak 'N Save grocery store with his two sons and their

18  mother. (Complaint, ¶ 16; the exhibits attached to the complaint show the date of the incident to be

19  April 4, 2007.) Plaintiff saw one Steven Milton, who had testified against Plaintiffs' brother

20  approximately three years previously. (Complaint, ¶ 17.) Plaintiff alleges that he and Milton "only

21  made eye contact from about 15-20 feet away." (Complaint, ¶ 18.) Milton called 911, and Emeryville

22  Police Officers arrived within two minutes. (Complaint, ¶ 19.) The officers and Milton proceeded to the

23  manager's office of Pak 'N Save, where Plaintiff believes that the store's surveillance-video system was

24  located and recording. (Complaint, ¶ 20.) Milton told the officers that Plaintiff approached and

25  threatened him. (Complaint, ¶ 22.) According to Plaintiff, Milton's testimony at a subsequent pre-trial

26  hearing contradicted Milton's on-the-scene statement, as Milton later testified that he was "not afraid" of

27  Plaintiff. (Complaint, ¶ 22.)

28      According to Plaintiff, the officers would have discovered that Milton's statement was "made up

1   fiction" if they had reviewed the store's surveillance video.  (Complaint, ¶¶ 23-26.)

2          **B.     Exhibits Attached to Complaint**.

3          Plaintiff's exhibits attached to the complaint include the Emeryville Police Department report of

4   the subject incident, the Oakland Police Department Arrest Report, the arrest warrant obtained after the

5   incident, Officer Dalton's Declaration in Support of Probable Cause for the arrest warrant, and the

6   Emeryville Police Department Event Record for the subject incident.

7   .          The police report for the subject incident contains the statement of Steven Milton.  In it, Milton

8   states that he was in the Pak 'N Save store on April 4, 2007, when he was approached by Plaintiff.  (Ex.

9   1 to Complaint at 1.)  Milton identified Plaintiff as the brother of a man who committed a murder that

10  Milton witnessed in 2003, and whom Milton testified against.  (Ex. 1 to Complaint at 1.)  According to

11  Milton, Plaintiff said to him, "you snitched on my brother and we're gonna get you right now."  (Ex. 1 to

12  Complaint at 1.)  Plaintiff then called someone on his cell phone and walked away.  (Ex. 1 to Complaint

13  at 1.)  Milton identified Plaintiff as African-American, 5'8" tall, 200 lbs., and 45-50 years old.  (Ex. 1 to

14  Complaint at 1.)  Milton stated that he was in fear for his safety because he believed that Cole and his

15  brothers would attempt to kill him.  (Ex. 1 to Complaint at 1.)

16         Milton called the police, and Emeryville Police Officer Andretitch was dispatched to the Pak 'N

17  Save store along with Officers Costello, Cassianos, and Sgt. Sierras at approximately 2:24 p.m. on April

18  4, 2007.  (Ex. 1 to Complaint at 7.)  The officers could not locate Plaintiff at the store.  (Ex. 1 to

19  Complaint at 7.)  They noted that Milton was visibly shaken.  (Ex. 1 to Complaint at 7.)  Milton

20  reported the events described in the preceding paragraph, and stated that he had been advised to contact

21  Sgt. Green of the Oakland Police Department if he was ever threatened or harassed by a member of the

22  Cole family.  (Ex. 1 to Complaint at 7.)  Milton told the officers that there were several witnesses to the

23  crime; however, none of the witnesses stayed in the area to provide a statement.   (Ex. 1 to Complaint

24  at 7.)

25         In a supplemental report, Emeryville Police Officer Alton recorded that he showed Milton a

26  photograph of Plaintiff obtained from CAL PHOTO, and that Milton identified Plaintiff as the person

27  who threatened him.  (Ex. 1 to Complaint at 6.)  Officer Alton telephoned Sgt. Green, who informed him

28  that Milton and Milton's wife had been key witnesses in the murder trial of Plaintiff's brother, and had

1   been moved to Yuba City due to threats they had received. (Ex. 1 to Complaint at 6.) Officer Alton

2   presented the case to the district attorney's office, which charged Plaintiff with a felony violation of

3   California Penal Code § 140(a) for threat of force or violence because of assistance in a prosecution.

4   (Ex. 1 to Complaint at 6.)

5         Officer Alton made the following statement in his Declaration of Support of Probable Cause for

6   the issuance of an arrest warrant against Plaintiff for violation of Penal Code § 140(a):

7   .
> On 4/4/07 @ 1420 hrs. def. approached victim who was a key witness to a
> murder which occurred in [Oakland] in 2003. [Victim] testified against

8   
> def.'s brother in that case. Def. threatened vict. by calling him a snitch &
> that he would take care of him by getting him right now. Vict. called

9   
> police. Def. fled scene. Vict. named def. & took threats very seriously.

10   (Ex. 1 to Complaint at 5.) Judge McGibbon signed the arrest warrant on April 5, 2007. (Ex. 1 to

11   Complaint at 3, 5.)

12         The arrest warrant states that "Paul David Cole has an active $100,000 Felony arrest Warrant for

13   PC140(a)-Threat of Force or Violence Because of Assistance in Prosecution." (Ex. 1 to Complaint at 3.)

14   The warrant, which contains a photograph of Plaintiff, describes Plaintiff as a 46-year-old African-

15   American male, 5'9" tall and weighing 180 lbs. (Ex. 1 to Complaint at 3.)

16         On April 30, 2007, Plaintiff was arrested by officers of the Oakland Police Department. (Ex. 1 to

17   Complaint at 2.) According to the arrest report, the officers contacted Plaintiff when he approached

18   them to inquire why they were talking with his brother. (Ex. 1 to Complaint at 2.)

19   **IV.**    **ARGUMENT**

20       **A.**    **Standard of Review**.

21         Federal Rule of Civil Procedure 12 permits parties to move the court to dismiss complaints for

22   "failure to state a claim upon which relief can be granted[.]" F.R.C.P. 12(b)(6). Dismissal of a

23   complaint pursuant to F.R.C.P. 12(b)(6) is proper where there is either a "lack of a cognizable legal

24   theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica*

25   *Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988). Dismissal is also proper where the complaint, on its

26   face, discloses affirmative defenses or absolute bars to recovery. *Weisbuch v. County of Los Angeles*,

27   119 F.3d 778, 783, fn. 1 (9th Circ. 1997).

28         A court reviewing a 12(b)(6) motion accepts the facts alleged in the complaint as true. *Balistreri,*

1  901 F.2d at 699.  But it need not accept as true conclusory allegations or legal characterizations.  *See*

2  *In re Delorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993).  "In practice, a ... complaint must

3  contain either direct or inferential allegations respecting all the material elements to sustain a recovery

4  under *some* viable legal theory."  *Id.* (emphasis in original) (internal citations omitted).  Moreover, a

5  plaintiff must plead direct or inferential allegations that *plausibly* support each material element of a

6  claim.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. ___, 127 S.Ct. 1955, 1968-1969 (2007).

7  .    **B.    All of Plaintiff's Causes of Action Fail to State a Claim for Relief Because the City's
         Officers Had Probable Cause to Obtain the Arrest Warrant**.

8

9       Plaintiff's causes of action all flow from the allegation that the City's officers failed to view the

10  Pak 'N Save surveillance video that purportedly proves Plaintiff's innocence.  Only taking this alleged

11  omission into account can Plaintiff attempt to plead a conspiracy to violate his rights (first cause of

12  action), inadequate training on the part of the City (second cause of action), retaliation for Plaintiff's

13  prior lawsuit (third cause of action), racial profiling (fourth cause of action), obtaining a warrant based

14  on misstatements or omissions (fifth cause of action) and violation of California rights (sixth cause of

15  action).  However, even assuming this alleged omission to be true at the pleadings stage, it does not

16  constitute any federal or state violation because the officers had probable cause to arrest Plaintiff based

17  on Milton's statement.

18

19       **1    Milton's Trustworthy Statement Provided the Requisite Probable Cause for
              the Arrest Warrant**.

20       Probable cause exists when police, at the moment of the arrest, have knowledge based on

21  reasonably trustworthy information that would warrant a belief by a reasonably prudent person that the

22  person arrested has committed a criminal offense.  *Beck v. Ohio*, 379 U.S. 89, 91 (1964).  The evidence

23  must support "only the probability, and not a prima facie showing, of criminal activity."  *Illinois v.*

24  *Gates*, 462 U.S. 213, 235 (1983).  Moreover, the evidence does not have to be admissible, but only

25  legally sufficient and reliable.  *Franks v. Delaware*, 438 U.S. 154, 165 (1978).

26       Here, Milton's statement at the scene warranted a belief by reasonably prudent officers that

27  Plaintiff had committed a felony violation of California Penal Code § 140(a).  Section 140(a) provides,

28  in relevant part:

> [E]very person who willfully uses force or threatens to use force or violence upon the person of a witness to ... a crime ... because the witness ... has provided any assistance or information to a law enforcement officer, or to a public prosecutor in a criminal proceeding ... shall be punished by imprisonment in the county jail not exceeding one year, or by imprisonment in the state prison for two, three, or four years.

Milton, who appeared visibly shaken, informed the officers at the scene that he recognized Plaintiff as the brother of a man who committed a murder that Milton witnessed in 2003, and whom Milton testified against. (Ex. 1 to Complaint at 1, 7.) According to Milton, Plaintiff said to him, "you snitched on my brother and we're gonna get you right now." (Ex. 1 to Complaint at 1.) Plaintiff then called someone on his cell phone and walked away. (Ex. 1 to Complaint at 1.) Milton's own statement to the officers thus satisfies all elements of Penal Code § 140(a), giving the officers a reasonable belief that Plaintiff had committed the violation.

Further inquiry showed Milton's statement to be trustworthy. Officer Alton telephoned Sgt. Green of the Oakland Police Department, who informed him that Milton and Milton's wife had been relocated due to threats they had received following their testimony against Plaintiff's brother. (Ex. 1 to Complaint at 6.) Sgt. Green's report thus corroborated Milton's statement in every respect. In addition, Milton's physical description of Plaintiff closely matched the description that appeared on the arrest warrant after Plaintiff's name was run through the Emeryville Police Department's alpha system. (*See* Ex.1 to Complaint at 1, 3, 8.) At the time the arrest warrant was obtained, the officers thus had knowledge, based on reasonably trustworthy information, that Plaintiff had threatened Milton in violation of Penal Code § 140(a). Accordingly, the City's officers had probable cause to obtain the arrest warrant.

Once probable cause is established, a police officer is under no constitutional duty "to investigate independently every claim of innocence." *Broam v. Bogan*, 320 F.3d 1023, 1032 (9th Cir. 2003) (quoting *Baker v. McCollan*, 443 U.S. 137, 145-146 (1979)). In addition, "an officer is under no duty to investigate further or to look for additional evidence which may exculpate the accused." *Id.* (quoting *Ahlers v. Schebil*, 188 F.3d 365, 371 (6th Cir. 1999)). But an officer may not ignore evidence known to be exculpatory. *See id.* Here, based on Plaintiff's own allegations, the City's officers merely failed to view the surveillance video that Plaintiff now claims to be exculpatory. (Complaint, ¶¶ 21, 23.)

1  However, Plaintiff does not allege that the officers knew the videotape to contain exculpatory evidence.

2  Plaintiff himself does not appear to have been present to inform the officers of his claim of innocence,

3  and he does not allege—nor can he truthfully allege—that the officers knew that the surveillance camera

4  recorded readily accessible video and audio of every possible encounter between Plaintiff and Milton

5  inside the Pak 'N Save.  To take it one step further, even giving Plaintiff the benefit of the doubt that the

6  officers knew there was surveillance tape, and reviewed the tape, Plaintiff admits that he did come

7  within 15-20 feet of Milton, and the officers could just have reasonably concluded that a verbal

8  exchange actually did take place.  Simply put, Plaintiff is asking the court to speculate on his behalf,

9  which has no basis in law.

10  Defendants acknowledge that the officers might have taken a variety of steps to investigate

11  Plaintiff's innocence.  But once probable cause to obtain an arrest warrant existed, they simply did not

12  owe Plaintiff a duty to take such steps.  Plaintiff appears to misunderstand the role of law-enforcement

13  officers, attributing to them the duties of the accused, defense counsel, judge and jury.  But the officers

14  have a limited duty under these circumstances: to possess probable cause for obtaining an arrest warrant,

15  and not to ignore evidence they know to be exculpatory.  Here, the City's officers satisfied both aspects

16  of that duty.

17  Plaintiff's allegation that Milton's pre-trial testimony differed from statements in the police

18  report does not alter this conclusion.  (*See* Complaint, ¶ 22.)  According to Plaintiff, Milton stated in

19  court that he was "not afraid" of Plaintiff, thus contradicting the police report.  (Complaint, ¶ 22.)

20  However, Milton's subsequent testimony at a pre-trial hearing has no bearing on whether, at the time the

21  officers obtained the warrant, the officers had probable cause to believe Plaintiff had violated Penal

22  Code § 140(a).  Moreover, a victim's fear of threats is not an element of a violation of Penal Code

23  § 140(a), meaning that even if Milton had never stated that he feared Plaintiff, the elements for a

24  violation of that section existed based solely on Milton's statements regarding Plaintiff's own conduct.

25  Because the officers had probable cause to arrest Plaintiff, none of Plaintiff's causes of action

26  states a claim for relief.  The first cause of action fails because the officers did not conspire to violate

27  Plaintiff's civil rights; instead, they obtained an arrest warrant based on probable cause.  *See Franklin v.*

28  *Fox*, 312 F.3d 423, 441 (9th Cir. 2002) (finding no conspiracy to violate civil rights where the arresting

-7-

1 │ officers had probable cause). The second cause of action fails because the City adequately trained its

2 │ officers in the duty owed to a suspect before obtaining an arrest warrant. Plaintiff's third cause of action

3 │ fails to state a claim for relief because the arrest warrant was motivated by probable cause, not a desire to

4 │ retaliate for Plaintiff's having filed a lawsuit in the past. Similarly, the fourth cause of action fails

5 │ because the arrest warrant was based on probable cause, not racial animus. Plaintiff's fifth cause of

6 │ action fails because the officers made no misstatements or omissions in obtaining the warrant; instead,

7 │ they made a sufficient showing of probable cause and omitted no exculpatory information. Finally, the

8 │ sixth cause of action for violation of California civil rights fails to state a claim for relief because the

9 │ officers based their conduct on probable cause, not on Plaintiff's race (this cause of action also fails for

10 │ reasons discussed in section IV(C), *infra*).

**2    Officers Allen, Alton, Andretitch and Diotalevl Are Entitled to Qualified Immunity from Liability and Suit.**

13 │ The qualified immunity defense shields from § 1983 liability law enforcement officers

14 │ performing discretionary functions of their job, so long as their conduct does not violate clearly

15 │ established constitutional or statutory rights under an objective reasonableness standard. *Harlow v.*

16 │ *Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is not just immunity from liability but also

17 │ from suit, meaning "an entitlement not to stand trial or face the other burdens of litigation." *Saucier v.*

18 │ *Katz*, 533 U.S. 194, 200 (2001) (internal citation omitted). Accordingly, it is an appropriate issue for

19 │ determination on a motion to dismiss *See id.* at 202.

20 │ The qualified immunity analysis has two prongs. First, the court must ask whether "taken in the

21 │ light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct

22 │ violated a constitutional right?" *Id.* at 201. Only if a constitutional right was violated should the court

23 │ address the next question of whether the right was clearly established in light of the circumstances. *Id.*

24 │ If needed, the second prong of the analysis must be made under the specific context of the case, not as a

25 │ broad proposition. *Id.* The relevant inquiry in determining whether a right is clearly established is

26 │ whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he

27 │ confronted. *Id.* at 202. "If the officer's mistake as to what the law requires is reasonable, however, the

28 │ officer is entitled to the immunity defense." *Id.* at 205. Thus, even if an officer acts unconstitutionally,

1   that officer is entitled to qualified immunity if the officer objectively could have believed that his

2   conduct was lawful. *Act Up!/Portland v. Bagley*, 988 F.2d 868, 871 (9th Cir. 1993). This standard

3   protects "all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502

4   U.S. 224, 229 (1991) (per curiam).

5         While qualified immunity is an affirmative defense ultimately to be proved by the defendant, the

6   plaintiff has the initial burden of proving that the right in question was clearly established. *Houghton v.*

7   *South*, 965 F.2d 1532, 1534-1537 (9th Cir. 1992). The second prong of the qualified-immunity

8   analysis—whether the federal right was clearly established in light of the circumstances—must be made

9   under the specific context of the case, not as a broad proposition. *Saucier*, 533 U.S. at 201; *Anderson v.*

10  *Creighton*, 483 U.S. 635, 639-640 (1987). Otherwise "[p]laintiffs would be able to convert the rule of

11  qualified immunity ... into a rule of virtually unqualified liability simply by alleging violations of

12  extremely abstract rights." *Anderson*, 483 U.S. at 639. "This is not to say that an official action is

13  protected by qualified immunity unless the very action in question has previously been held unlawful ...

14  but it is to say that in the light of the pre-existing law the unlawfulness must be apparent." *Id.* at

15  639-640.

16        Here, as discussed in section IV(B)(1), *supra*, Officers Allen, Alton, Andretitch and Diotalevl did

17  not violate any of Plaintiff's constitutional rights. But even if they had, they would be entitled to

18  qualified immunity because the right in question was not clearly established at the time. Plaintiff is

19  attempting to assert a the following as a clearly established right: that police officers with knowledge of

20  the possibility of a surveillance video depicting a reported crime must review the video for any

21  exculpatory evidence, even once they have probable cause to arrest. Defendants are aware of no cases

22  that address this specific purported right, but *Franklin*, *supra*, is analogous. The *Franklin* plaintiff

23  brought a § 1983 action against police officers who had arrested him for the murder of his daughter's

24  friend twenty years prior to the arrest. *Franklin*, 312 F.3d at 428-437. Affirming the District Court's

25  granting of summary judgment in favor of the officers on the claim for conspiracy to violate civil rights,

26  the Ninth Circuit held that the officers were entitled to qualified immunity because they can reasonably

27  have believed that probable cause existed to arrest the plaintiff. *Id.* at 437-441.

28        The *Franklin* court first determined that the officers possessed reasonably trustworthy

1  information indicating that Mr. Franklin had committed the murder. They had interviewed his daughter,

2  who had witnessed the murder, and found her statements to be consistent with other information found

3  in the police file. *Id.* at 438-439. In the present case, the City's officers interviewed Milton, whose

4  description of Plaintiff's violation of Penal Code § 140(d) was shown to trustworthy based on Milton's

5  own demeanor as well as on subsequent inquiries with the Oakland Police Department and the district

6  attorney's office. Accordingly, as in *Franklin*, the City's officers possessed reasonably trustworthy

7  information indicating that Plaintiff had violated § 140(d).

8          The *Franklin* plaintiff attempted to call the officers' reasonable belief into question by pointing

9  to a number of alleged weaknesses in their analysis. First, he alleged that the officers impermissibly

10  relied on hypnotically induced memories. *Id.* at 439. However, the court found that while the officers

11  may have known that the witness had undergone hypnosis for weight loss, there was no indication that

12  they knew that her memories of the event in question were hypnotically induced. *Id.* at 440.

13  Accordingly, the officers did not err in relying on her statements. *Id.* at 440. Here, similarly, while the

14  City's officers may have known that a surveillance video existed, they did not know that it was readily

15  accessible, that it depicted every possible encounter between Plaintiff and Milton in the Pak 'N Save,

16  that it contained audio recording, and that it contained exculpatory evidence.

17          The *Franklin* plaintiff next contended that the witness's knowledge of non-publicized details of

18  the crime was not credible because such events actually had been reported in contemporary media

19  accounts. *Id.* Stating that "[o]ur qualified immunity analysis turns on what reasonable officers could

20  conclude based on the information available to [defendant officers] at the time of the arrest," the court

21  found that there was no evidence that the officers had actually read those articles, and noted that the

22  witness herself told the officers that she had avoided all media accounts of the crime. *Id.* The court

23  went on to state that "[a]lthough [the officers] might have been more diligent by conducting a thorough

24  newspaper search of all articles about [the victim's] murder, they were reasonable to conclude that,

25  based on the information they possessed," the witness's statements were reliable. *Id.* Here, too, the

26  City's officers might have conducted a thorough search of all potential evidence, but they were

27  reasonable to conclude that Milton's statement was reliable—and they did not breach a duty owed to

28  Plaintiff by failing to conduct such a search. They are thus entitled to qualified immunity.

1    The third argument advanced by the *Franklin* plaintiff was that the officers' "suppression" of the

2    witness's prior arrests for prostitution and cocaine possession undermined the witness's credibility. *Id.*

3    The court found that the arrests record, while unseemly, did not impair the witness's credibility and thus

4    did not call the officers' conclusions into question. *Id.* at 440-441.  In the present case, there is no

5    indication that Milton possessed any sort of record that might reflect poorly on his credibility, or that the

6    City's officers knew of such record.  Accordingly, the officers had no reason to question Milton's

7    credibility nor their own conclusions with respect to probable cause.[1]

8        Because Officers Allen, Alton, Andretitch and Diotalevl could reasonably conclude that Plaintiff

9    had committed a violation of Penal Code § 140(a), they did not violate Plaintiff's clearly established

10   rights in obtaining the search warrant without viewing the surveillance video.  They are thus entitled to

11   qualified immunity from both liability and suit.

12
13   **C.    Plaintiff's Sixth Cause of Action for Violation of State Statutes Fails by the Terms of
          the Statutes in Question.**

14       Plaintiff's sixth cause of action alleges violations of California Penal Code § 422.6(a) and Civil

15   Code 52.1. Both theories fail to state a claim for relief based on the terms of the underlying statutes.

16       Penal Code § 422.6 provides, in relevant part:

17          (a) No person, whether or not acting under color of law, shall by force or
             threat of force, willfully injure, intimidate, interfere with, oppress, or
18           threaten any other person in the free exercise or enjoyment of any right or
             privilege secured to him or her by the Constitution or laws of this state or
19           by the Constitution or laws of the United States in whole or in part because
             of one or more of the actual or perceived characteristics of the victim
20           listed in subdivision (a) of Section 422.55.
             [....]
21          (c) Any person convicted of violating subdivision (a) or (b) shall be
             punished by imprisonment in a county jail not to exceed one year, or by a
22           fine not to exceed five thousand dollars ($5,000), or by both the above
             imprisonment and fine ...[.]
23

24   This section is a penal statute providing for punishment, not a civil statute providing a private right of

25   action for damages.  Moreover, a person only violates it "by force or threat of force[.]" Cal. Pen. Code

26   _____

27       [1]The *Franklin* plaintiff advanced one additional argument: that the defendant officers had based their suspicions on
     his question, when they confronted him, as to whether he had spoken with his daughter, the victim's best friend and the chief
28   witness against him.  The court rejected this argument, which is inapplicable here, as Plaintiff does not allege that the City's
     officers based their suspicions on Plaintiff's own statements. *Franklin*, 312 F.3d at 441.

J:\1426\sf0081\M-DIS.mot-mpa.wpd                                    Case No. CV 08-2360 CRB

1   § 422.6(a).  Here, according to Plaintiff's allegations, no defendant had any contact at all with Plaintiff

2   during the events giving rise to this lawsuit.  Accordingly, the defendants cannot have applied force to

3   Plaintiff or threatened to do so.  Plaintiff's claim for a violation of § 422.6(a) thus fails to state a claim

4   for relief and should be dismissed.

5           With respect to Civil Code § 52.1, defendants acknowledge that its violation may give rise to a

6   private right of action for damages.  *See* Cal. Civ. Code § 52.1(b).  However, Civil Code § 52.1 provides

7   this right of action under the following circumstances:

8               If a person or persons, whether or not acting under color of law, interferes
                by threats, intimidation, or coercion, or attempts to interfere by threats,
9               intimidation, or coercion, with the exercise or enjoyment by any individual
                or individuals of rights secured by the Constitution or laws of the United
10              States, or of the rights secured by the Constitution or laws of this state ...[.]

11  Here, there is no indication that the City's offers employed actual or attempted threats, intimidation or

12  coercion against Plaintiff.  On the contrary, based on the allegations in the complaint, the officers had no

13  contact at all with Plaintiff during the events described in the complaint.  Accordingly, Plaintiff's cause

14  of action based on Civil Code § 52.1 fails by the terms of that section.  Plaintiff's sixth cause of action

15  should thus be dismissed with prejudice.

16  **V.    CONCLUSION**

17          For the foregoing reason, Defendants respectfully request that the Court grant their motion and

18  dismiss Plaintiff's complaint in its entirety with prejudice.  In the alternative, Defendants respectfully

19  request that the Court grant their motion as to any one or more claims for relief against them, and

20  dismiss such claim(s) with prejudice.

21

22          Dated: July 31, 2008.

23                                                      LOW, BALL & LYNCH

24

25                                              By_____
                                                        DALE L. ALLEN, JR.
26                                                      DIRK D. LARSEN
                                                        Attorneys for Defendants
27                                                      CITY OF EMERYVILLE, OFFICERS ROBERT
                                                        ALTON, MICHAEL ALLEN, S. ANDRETICH
28                                                      AND DAN DIOTALEVL

-12-