IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

PAUL D. COLE,

    Plaintiff,

v.

CITY OF EMERYVILLE, et al.,

    Defendants.

No. C 08-02360 CRB

**MEMORANDUM AND ORDER**

Plaintiff filed this *pro se* action for damages under 42 U.S.C. section 1983 alleging various violations of his constitutional and state law rights in connection with his arrest. Pending before the court is defendants' motion to dismiss for failure to state a claim upon which relief can be granted. After thorough consideration of the parties' papers and arguments, the court GRANTS defendants' motion to dismiss with prejudice.

**BACKGROUND**

A.   <u>Pleading Allegations</u>

On May 4, 2007, plaintiff was inside a Pak 'N Save grocery store with his two sons and their mother. Complaint, ¶ 2 (the exhibits attached to the complaint show the date to be April 4, 2007). Plaintiff saw one Steve Milton, who had testified against plaintiff's brother in a murder trial three years earlier. Id. at ¶ 17. Plaintiff alleges that he and Milton "only made eye contact from about 15-20 feet away." Id. at ¶ 18. However, Milton called the police

from Pak 'N Save to report that the plaintiff had verbally threatened him. Id. at ¶¶ 19, 22. Milton's allegations led to plaintiff's arrest on April 30, 2007.

Plaintiff alleges that had defendant police officers reviewed the store's surveillance video, they would have discovered that Milton's statement was "made up fiction." Id. at ¶¶ 23-26. Plaintiff asserts that defendants had knowledge of the store's video surveillance system, pointing to a police report in which defendant Officer Andretich noted the store's camera security system. Id. at ¶ 21; Id., Exh. 1 at 10. Plaintiff argues that defendant officers had an obligation to view the surveillance video tape before arresting him: "It is well known, when a videotape of the conduct at issue is both known and readily accessible to an officer investigating an alleged crime and arresting a suspect, the officer must review the videotape so as to avoid improperly arresting an otherwise innocent person." Id. at ¶ 21. Plaintiff also alleges that Milton's testimony at a pre-trial hearing contradicted Milton's initial statement to police officers that he feared plaintiff would kill him, as Milton later testified that he was "not afraid" of plaintiff. Id. at ¶ 22.

Plaintiff asserts six causes of action, five of which are based on alleged violations of the United States Constitution and are thus brought pursuant to 42 U.S.C. section 1983. One is based on alleged violations of California law. The causes of action are as follows: First, that defendant officers violated plaintiff's constitutional right to be free from conspiracy. Id. at ¶¶ 27-28. Second, that the City of Emeryville failed to train its officers adequately in violation of plaintiff's constitutional rights. Id. at ¶¶ 29-31. Third, that plaintiff's arrest was out of retaliation against plaintiff for a "previous legal encounter" with Officer Alton, in violation of the First and Fourteenth Amendments as well as the California constitutional right to be free from retaliation. Id. at ¶¶ 32 - 34. Fourth, that defendant officers engaged in racial profiling in violation of the Fifth and Fourteenth Amendments and California Penal Code § 13519.4(b). Id. at ¶¶ 35-38. Fifth, that defendant officers undertook an unreasonable search and seizure in violation of the Fourth Amendment, where "defendant obtained an arrest warrant based on misstatements or omissions, which were deliberate and reckless." Id.

at ¶¶ 39-41. Sixth, that defendants violated California Penal Code § 422.6(a) and California Civil Code § 52.1. Id. at ¶¶ 42-46.

### B. Exhibits Attached to Complaint

Plaintiff attached several exhibits to his complaint. These include: the Emeryville Police Department report for the Pak 'N Save incident, the Oakland Police Department Arrest Report, the arrest warrant obtained after the incident, Officer Dalton's Declaration in Support of Probable Cause for the arrest warrant, and the Emeryville Police Department Event Record for the incident. Because these documents are attached to the complaint, the Court may properly consider them in ruling on defendant's motion. See Tyler v. Cuomo, 236 F.3d 1124, 1131 (9th Cir. 2000).

The police report of the Pak 'N Save incident includes Milton's statement about his interaction with plaintiff. Police recorded Milton's statement as follows:

> …While I was in the store I was approached by a black male named Paul Cole. Cole is the brother of a man who committed a murder that I witnessed in Oakland about 2003. I testified against the suspect and now the brother Paul Cole wants revenge. Cole said to me, 'You snitched on my brother and we're gonna get you right now.' Cole then called someone on his cellular phone and walked away. Cole is 5'8", 200 lbs., 45-50 years old, wearing a burgundy shirt. I was in fear for my safety because I believe Cole and his brothers will try and kill me. I can identify Cole and I want him arrested. [signed by Steven Milton].

Complaint, Exh. 1 at 9. Milton made this statement to defendant police officers Costello and Andretich, who were dispatched to the Pak 'N Save store at approximately 2:24 p.m. on April 4, 2007 after Milton called the police. Id. at 7. The officers noted that Milton was visibly shaken – his eyes were red and watery, and his hands trembled as he spoke. Id. at 15.

Milton told the officers that several family members had reported to him that the suspect's family wanted to kill him. Id. He had moved out of the area, but was in Emeryville for work (he was dressed in construction work clothing). Id. Milton stated to police that he had been advised to contact Sgt. Green of the Oakland Police Department if he was ever threatened or otherwise harassed by a member of the Cole family. Id. The officers could not locate the plaintiff within the vicinity of the store. Id. at 5.

In a supplemental report, Emeryville Police Officer Alton stated that he showed Milton a photograph of plaintiff. Id. at 14. Milton confirmed that the individual in the photograph was the same person who had threatened him on April 4, 2007. Id. The report also noted that Sgt. Green had confirmed to Officer Alton that Milton and his wife were key witnesses in a case involving Paul Cole's brother, Peter Cole, and were moved to Yuba City due to threats they had received. Id. Officer Alton presented the case to deputy district attorney Tom Rogers, who telephoned the trial attorney (deputy district attorney Gould). Id. Gould likewise confirmed that Milton was the key witness in Peter Cole's murder trial, which resulted in a hung jury in favor of guilty. Id. Peter Cole subsequently pled guilty to voluntary manslaughter. Id.

Deputy district attorney Rogers charged plaintiff with a felony violation of California Penal Code § 140(a) for threat of force or violence because of assistance in a prosecution. In his Declaration of Support of Probable Cause for the issuance of an arrest warrant against plaintiff, Officer Alton stated:

> On 4/4/07 @ 1420 hrs. def. approached victim who was a key witness to a murder which occurred in [Oakland] in 2003. [Victim] testified against def.'s brother in that case. Def. threatened vict. by calling him a snitch & that he would take care of him by getting him right now. Vict. called police. Def. fled scene. Vict. named def. & took threats very seriously.

Id. at 9. An arrest warrant was issued on April 5, 2007. Id. at 3. As noted, plaintiff was arrested by Oakland Police Department officers on April 30, 2007. Id. at 2. According to the arrest report, the officers contacted Plaintiff when he approached them to inquire why they were talking with his brother. Id. at 2.

While plaintiff was initially charged with a felony, the charges have been reduced to a misdemeanor on which plaintiff is currently awaiting trial.

//
//
//

4

C.  Defendants' Motion to Dismiss

Defendants move to dismiss plaintiff's complaint under Federal Rule of Civil Procedure 12(b)(6), arguing that the complaint fails to state any claim upon which relief can be granted. Defendants argue that all of plaintiff's causes of action hinge upon his assertion that the officers had a duty to view the Pak 'N Save surveillance video which plaintiff alleges would prove his innocence. However, even assuming that defendants failed to view the tape, this "omission" does not constitute any federal or state violation because the officers had probable cause to arrest plaintiff based on Milton's statements to police. Defendants also argue that they are entitled to qualified immunity.

**LEGAL STANDARD**

Federal Rule of Civil Procedure 12(b)(6) permits parties to move the Court to dismiss complaints for failure to state a claim upon which relief can be granted. Under Rule 12(b)(6), a complaint should not be dismissed unless a plaintiff can prove "no set of facts in support of his claim that would entitle him to relief." Parks Sch. of Bus., Inc. v. Symington, 51 F.3d 1480, 1484 (9th Cir. 1995). The court must take the non-moving party's factual allegations as true and must construe those allegations in the light most favorable to the non-moving party. See id. The court must also draw all reasonable inferences in favor of the non-moving party. See Usher v. City of Los Angeles, 828 F. 2d 556, 561 (9th Cir. 1987).

**DISCUSSION**

**A.  The Police Officers had Probable Cause to Arrest Plaintiff Based Upon Milton's Testimony, and Thus Plaintiff has Not Stated a Claim for which Relief can be Granted.**

1.  The officers had probable cause to arrest plaintiff.

"The test for whether probable cause exists is whether at the moment of arrest the facts and circumstances within the knowledge of the arresting officers and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing the

5

[plaintiff] had committed or was committing an offense." United States v. Jensen, 425 F.3d 698, 704 (9th Cir. 2005) (internal quotation marks and citation omitted). "A determination as to whether probable cause exists requires a 'practical, common-sense' decision based on the totality of the circumstances, including the veracity, basis of knowledge and reliability of the information provided by informants." Id. The evidence need only support "the probability, and not a prima facie showing, of criminal activity." Illinois v. Gates, 462 U.S. 213, 235 (1983). Where the source of police information supporting probable cause is an eyewitness to a crime, "probable cause to arrest the suspect may exist even in the absence of an independent showing of reliability of the source so long as the witness is fairly certain of the identification." Vernon v. City and County of San Francisco, 2008 WL 3916264 (N.D. Cal. 2008) (citing United States v. Hammond, 666 F.2d 435, 439 (9th Cir. 1982)).

The question in the present case, then, is not whether Milton *truthfully* reported to police officers that plaintiff had threatened him. Rather, the Court must determine whether based on the allegations of the complaint and the documents attached to the complaint, the officers had probable cause to believe that plaintiff had threatened Milton. Milton's statement to police officers on April 4th, 2007 warranted a belief by reasonably prudent officers that plaintiff had indeed threatened Milton with violence, in violation of California Penal Code § 140(a). Milton's statement to the officers clearly satisfies all elements of Penal Code § 140(a). According to Milton, plaintiff said to him, "you snitched on my brother and we're gonna get you right now." Plaintiff then called someone on his cell phone and walked away.

Milton identified plaintiff by name and by description. Milton's description of the man who had threatened him closely matched the description that appeared on the arrest warrant after plaintiff's name was run through the Emeryville Police Department's alpha system. See Complaint, Exh. 1 at 1, 3, 8. Thus, the officers could be reasonably confident that Milton had not misidentified his perpetrator.

6

Officer Andretich's report that Milton appeared visibly shaken further supports the reasonableness of the officers' belief that Milton was a credible witness. In addition, further inquiry by the officers showed Milton's statements to be trustworthy. Officer Alton contacted Sgt. Green of the Oakland Police Department, who confirmed that Milton and Milton's wife had been relocated due to threats they had received following their testimony against plaintiff's brother. Deputy district attorney Gould likewise confirmed that Milton had been a key witness in the murder trial. These facts – alleged by plaintiff in his complaint and the attached documents – establish probable cause as a matter of law.

Plaintiff does not and cannot truthfully dispute that Milton reported to police that plaintiff had threatened him. In fact, the documents plaintiff attached to his motion to dismiss suggest that Milton told police just that. Melissa Alves states that she saw Steve Milton go with police officers into a private office. Plaintiff's Opposition, Exh. 1 at 3.[1] Both Denisha Jones and Lee Milton acknowledge that Milton has made statements that plaintiff or plaintiff's family has threatened him. Plaintiff's Opposition, Exh. 9 at 1; Plaintiff's Opposition, Exh. 10 at 1. In this way, this case differs from that in Cook v. Sheldon, 41 F.3d 73 (2nd Cir. 1994) (cited by plaintiff). The plaintiff in Cook alleged that the arrest at issue lacked probable cause because it was based on the arrestee's having advised his friends of their right to a lawyer. Id. at 77. Thus, the plaintiff's allegations, if true, supported a finding that officers did not have probable cause for his arrest. See id. Here, in contrast, plaintiff cannot allege that probable cause did not exist *unless* plaintiff claims that Milton did not tell police that plaintiff threatened him. As explained above, plaintiff does not make such an allegation and cannot truthfully make such an allegation because he was not present when Milton spoke with police.

//

//

---

[1] Generally, the Court will not consider documents other than the complaint and those documents attached to the complaint in deciding a motion to dismiss. However, in the present matter, the Court will consider the exhibits attached to plaintiff's opposition, assuming that everything alleged is true, in order to determine if plaintiff could state a claim.

7

Plaintiff argues instead that the officers had a duty to view the Pak 'N Save surveillance video and to question witnesses readily available at the scene, actions which purportedly would have revealed his innocence.

### 2. The officers did not have a duty to view the Pak 'N Save surveillance video or to question witnesses at the scene.

Once probable cause is established, a police officer is not constitutionally required to "investigate independently every claim of innocence." Broam v. Bogan, 320 F.3d 1023, 1032 (9th Cir. 2003) (internal citation and quotation marks omitted). Though an officer may not ignore evidence *known* to be exculpatory or potentially exculpatory when still determining whether probable cause exists, Ahlers v. Schebil, 188 F.3d 365, 371-72 (6th Cir. 1999), police officers are not required to investigate beyond an initial determination of probable cause or to "look for additional evidence which may exculpate the accused." Broam, 320 F.3d at 1032 (internal citation and quotation marks omitted); see also Criss v. City of Kent, 867 F.2d 259, 263 (6th Cir. 1988) (law enforcement "is under no obligation to give any credence to a suspect's story [or alibi] nor should a plausible explanation in any sense require the officer to forego arrest pending further investigation if the facts as initially discovered provide probable cause.").

Wilson v. Morgan, 477 F.3d 326 (6th Cir. 2007) (cited by plaintiff) also supports this principle. At issue was the plaintiffs' arrest for allegedly causing a disturbance at another individual's residence. Id. at 330. Police at the residence were presented with potentially exculpatory evidence before plaintiffs were arrested, and it was eventually discovered that plaintiffs were innocent. Id. Nonetheless, the court found that the officers had probable cause to arrest the plaintiffs, noting that the officers were not required to pursue additional evidence once probable cause was established. Id. at 336.

In the present case, the officers had no duty to view the Pak 'N Save surveillance tape or to interview any potential witnesses in Pak 'N Save. Before a determination of probable cause, police officers are only required to pursue evidence *known* to be exculpatory or

8

potentially exculpatory, and, according to plaintiff, evidence that is also "readily available." Plaintiff does not and cannot allege that the police officers knew of any witnesses who saw or heard the alleged interaction between plaintiff and Milton; nor can plaintiff allege that defendants knew any such witness to be "readily available." While he claims he was in the store when the officers first arrived, he does not allege that the officers saw him and he admits that he left the store shortly thereafter. Nor does he allege that the officers were aware that his companion, Melissa Alves, was still in the store.

In his opposition plaintiff appears to assert that the officers *did* view the videotape and, failing to see any evidence supporting the alleged crime, undertook an arrest of a man they understood to be innocent. (Plaintiff alleges that the tape has been destroyed pursuant to Pak 'N Save's retention policy.) However, even assuming that the video would have revealed what plaintiff speculates it would – that plaintiff never came within 15-20 feet of Milton – and that defendants viewed such video, this does not by itself contradict Milton's claims that a verbal exchange took place, as a verbal exchange at a distance of 15-20 feet is quite possible. Therefore, even if defendants did view the surveillance tape, and even assuming that the tape showed what plaintiff speculates it would show, probable cause for plaintiff's arrest would nonetheless exist.

Plaintiff cites Romero v. Fay, 45 F.3d 1472, 1476-77 (10th Cir. 1995) for the proposition that "officers may not ignore a videotape which records the alleged criminal acts," and presumably for the additional proposition that police officers are required to interview witnesses readily available at the scene of a crime. Although Romero itself does not involve a surveillance tape, the Romero court cites a Tenth Circuit decision which held that probable cause did not exist for a plaintiff's arrest where, among other things, police did not view pictures of the crime scene recorded by surveillance video. See Clipper v. Takoma Park, Md., 876 F.2d 17, 19-20 (1989). Both Romero and Clipper are distinguishable.

In Romero, the court stated that "the probable cause standard of the Fourth Amendment requires officers to reasonably interview witnesses readily available at the scene,

9

investigate basic evidence, or otherwise inquire if a crime has been committed at all *before invoking the power of warrantless arrest and detention*." 45 F.3d at 1476-77. The arrest and detention at issue here was not warrantless, and therefore Romero is inapposite. In addition, similar to the Ninth Circuit authority cited previously, the Romero court stated that once probable cause is established, officers have no duty to investigate further: "Once [defendant officer] concluded based on the facts and information known to him that probable cause existed to arrest Plaintiff for the murder of [victim], his failure to question Plaintiff's alibi witnesses prior to the arrest did not negate probable cause." Id. at 1478.

In any event, even if Romero applied here, the police report for the Pak 'N Save incident does not reflect that any witnesses presented themselves for questioning, and, as is explained above, plaintiff does not allege that defendants knew of any readily available witnesses. Plaintiff himself acknowledges that he had left the store.

In Clipper, the court held that an officer lacked probable cause to arrest the plaintiff in a bank robbery case where the arresting officer ignored a witnessing officer's comment that he was nor sure plaintiff was the robber, failed to view the surveillance film from the robbery, and failed to interview alibi witnesses. 876 F.2d at 19-20. Thus, the officer's failure to view the surveillance tape negated probable cause only in conjunction with the officer's dismissal of other potentially exculpatory evidence *in the officer's knowledge* (the witnessing officer's statement that he did not think plaintiff had committed the crime). Here, plaintiff cannot in good faith allege that defendants had actual knowledge of any potentially exculpatory evidence.

        3.    <u>Because probable cause existed for plaintiff's arrest, plaintiff has not stated a claim for which relief can be granted.</u>

All of plaintiff's causes of action rely on his assertion that defendants failed to consult readily available witnesses and view the surveillance videotape. Thus, according to plaintiff, he was arrested based on "deliberate and reckless" omissions and with unconstitutional motives. However, since defendants had probable cause for plaintiff's arrest as a matter of

10

law, plaintiff cannot plausibly argue that he was arrested as a result of a conspiracy to violate his rights, inadequate training on the part of the City of Emeryville, retaliation, or racial profiling. Nor can plaintiff argue that the officers obtained a warrant based on misstatements or omissions (because defendants did not have a duty to discover such "omissions"), or that defendants violated his rights under California Penal Code § 422.6 or California Civil Code § 52.1.

Because defendants had no duty to view the surveillance videotape, and because their failure to do so did not negate the existing probable cause for plaintiff's arrest, plaintiff cannot state a claim under which relief can be granted. In the alternative, even if the officers did review the surveillance tape – as plaintiff appears to now allege – and the tape revealed what plaintiff speculates it shows, probable cause for plaintiff's later arrest still existed. Defendants' motion to dismiss must therefore be granted.

### B.  Defendant Police Officers Have Qualified Immunity.

Even if defendant officers did violate plaintiff's constitutional rights, dismissal of plaintiff's claims is nonetheless warranted. At a minimum, defendants are entitled to qualified immunity.

The defense of qualified immunity generally protects government officials from civil liability if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Accordingly, "[i]f an official could reasonably have believed her actions were legal in light of clearly established law and the information she possessed at the time, she is protected by qualified immunity." Franklin v. Fox, 312 F.3d 423, 437 (9th Cir. 2002) (citing Saucier v. Katz, 533 U.S. 194, 202 (2001); Devereaux v. Abbey, 263 F.3d 1070, 1074 (9th Cir. 2001) (en banc)). The concern of the immunity requirement is to "acknowledge that reasonable mistakes can be made." Saucier, 533 U.S. at 205. Thus, the rule of qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Brady v. Fort Bend County, 58 F.3d 173, 173 (9th Cir. 1995) (quoting Malley v. Briggs, 475

U.S. 335, 341 (1986)) (internal quotation marks omitted). Defendants can have reasonable, but mistaken, belief about the facts or about what the law requires in any given situation. Saucier, 533 U.S. at 202 (internal citation omitted). A ruling on the issue of qualified immunity should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive. See id. at 200.

If a court determines that a plaintiff has alleged the deprivation of an actual constitutional right, the court will then undertake a two-part test in deciding whether a government official has qualified immunity. Franklin, 312 F.3d at 437 (citing Saucier, 533 U.S. at 201-02); ACT UP!/ Portland v. Bagley, 988 F.2d 868, 871 (9th Cir. 1993)). First, the court will ask whether the law that governs an official's conduct was clearly established. Id. The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation confronted. Saucier, 533 U.S. at 201. If the law is determined to be clearly established, the court will inquire whether a reasonable officer could have believed the conduct was lawful. Id.

In the present case, there is no clearly established law requiring that defendants pursue potentially exculpatory evidence upon an initial determination of probable cause. To the contrary, as described above, the relevant case law is explicit that such a requirement does not exist. Rather, under clearly established probable cause law, a reasonable officer in defendants' positions could have believed that he had probable cause to arrest plaintiff, even assuming that the facts alleged by the plaintiff are true. This is so, even if, as plaintiff now appears to allege in his opposition, the officers viewed the surveillance tape and (1) it recorded the incident, and (2) showed plaintiff 15 to 20 feet from Milton; such tape would not have negated probable cause.

**C. Leave to Amend Would be Futile.**

In sum, the only way plaintiff could state a claim is if he could allege in good faith that Milton did not report to the officers those facts that the police report reflects. As

plaintiff had departed the store and was not present when Milton made his statement to the police, plaintiff cannot in good faith make any allegations as to what Milton told the officers. Moreover, the documents plaintiff attached to his complaint and opposition confirm that Milton has reported that plaintiff threatened him. Accordingly, plaintiff's complaint must be dismissed without leave to amend.

## CONCLUSION

The issue in this lawsuit is not whether plaintiff may be innocent of the crime with which he is charged; plaintiff may well be acquitted of the charges after trial. Rather, the issue is whether based on the facts as alleged by plaintiff, and that could be alleged by plaintiff in good faith, there was probable cause for his arrest as a matter of law. As the Court concludes that there was, defendants' motion to dismiss is GRANTED without leave to amend.

**IT IS SO ORDERED.**

Dated: Sep. 22, 2008

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE